JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNA MIKE-PRICE, *et al.*,<br><br>                Plaintiffs,<br><br>     v.<br><br>TOSHIBA LIFESTYLE PRODUCTS AND SERVICES CORPORATION, *et al.*,<br><br>                Defendants. | Case No. 2:23-02214-SPG-MAA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [ECF No. 11]** |

Before the Court is Plaintiffs C.M.P., Johnna Mike-Price, and Durell Mike-Price's ("Plaintiffs") motion to remand the case to state court for lack of subject matter jurisdiction ("Motion"). (ECF No. 11 ("Mot.")). The Court heard oral argument on this matter on April 26, 2023. Having considered the parties' submissions, the relevant law, the record in this case, and the hearing on the Motion, the Court GRANTS the Motion.

I.     BACKGROUND

    A.     **Factual Background**

The Complaint alleges as follows: On July 31, 2022, six-year old Plaintiff C.M.P. ingested a button battery that fell from a remote control with type name RG15C/E ("Subject Remote") for a Toshiba-branded Window Type Air Conditioner Model RAC-

WK0812ESCWRU ("Subject AC Unit"). (ECF No. 11-2 ¶¶ 1–2 ("Compl.")). The Subject Remote opened while C.M.P. held it. (*Id.*). C.M.P.'s subsequent ingestion of the battery that allegedly fell from the inside of the Subject Remote caused "catastrophic" injuries to his gastrointestinal system and "severe medical trauma." (*Id.*). The Subject Remote and Subject AC Unit (collectively referred to as, the "Subject Products") were purchased by Plaintiffs from Defendant Home Depot, Inc., in Camarillo, California. (*Id.* ¶ 2).

The Complaint alleges that the Subject Products were defectively and negligently designed, manufactured, marketed, distributed, and sold by Toshiba Lifestyle Products and Services Corporation (Toshiba LPS), Toshiba Corporation, Midea Group Co., Ltd., Midea America Corp. ("Midea America"), Toshiba Logistics America, Inc. ("Toshiba Logistics America"), GD Midea Air Conditioning Equipment Co., Ltd. ("GD Midea"), Home Depot, Inc., Midea Electric Trading (Singapore) Co. Pte. Ltd.,[1] (collectively, "Defendants") and DOES 2 through 50. *See* (Compl. ¶¶ 1–2; ECF Nos. 1-1 at 505; 4 ¶ 2, Ex. A). The Complaint further alleges that Defendants designed and manufactured the Subject Remote defectively and negligently for multiple reasons, including by utilizing a button battery in the remote, "despite awareness and knowledge that the design and nature of such batteries uniquely posed significant risk of serious injury and death to children." (Compl. ¶ 4).

According to the Complaint, Defendant Toshiba LPS is a Japanese Corporation and the former consumer appliance subsidiary of Defendant Toshiba Corporation, another Japanese corporation. (*Id.* ¶¶ 3, 12–13). Toshiba LPS designed, manufactured, marketed, distributed, and sold the Subject Remote. (*Id.* ¶ 3). Toshiba LPS was partially acquired in 2016 by Defendant Midea Group Co. Ltd., a Chinese corporation, and its American subsidiary, Defendant Midea America, a New Jersey corporation. (*Id.* ¶¶ 3, 14–15). Defendant Midea Group Co., Ltd. holds a majority stake in Defendant Toshiba LPS, while Defendant Toshiba Corporation maintains a minority stake in Toshiba LPS. *See* (*id.* ¶ 3). The Complaint also alleges that Defendant Toshiba Logistics America is a California

---

[1] On March 1, 2023, Plaintiffs filed an amendment to the complaint, substituting Midea Electric Trading (Singapore) Co. Pte. Ltd. for DOE 1. (ECF No. 1-1 at 505; 4 ¶ 2).

corporation, which imported, distributed, coordinated, and/or facilitated the distribution of both Subject Products. (*Id.* ¶ 16).  Defendant Home Depot Inc., a Georgia corporation, further distributed the Subject Products throughout California, including the Camarillo, California Home Depot store where Plaintiffs purchased the Subject AC Unit. *See* (*id.* ¶¶ 18–19).  Although the Complaint names as a defendant GD Midea Air-Conditioning Equipment Co., Ltd., another Chinese corporation, it does not contain specific allegations regarding what role the company played in the Subject Products' chain of distribution. *See* (*id.* ¶ 17).

### B. Procedural History

On September 13, 2022, Plaintiffs Johnna Mike-Price, Durell Mike-Price, and C.M.P., by and through C.M.P.'s Guardian Ad Litem, Susanne Drumheller, filed the instant Complaint in Los Angeles County Superior Court. (*Id.* at 2).  All Plaintiffs are California citizens. (*Id.* ¶¶ 10–11).  Plaintiffs asserts causes of action for Negligence against all Defendants and DOES 2 through 20, (*id.* ¶¶ 23–30); Products Liability–Negligence against all Defendants and DOES 2 through 20, (*id.* ¶¶ 31–39); Strict Products Liability–Manufacturing Defects against all Defendants and DOES 2 through 50, (*id.* ¶¶ 40–47); Strict Products Liability–Design Defect against all Defendants and DOES 2 through 50, (*id.* ¶¶ 48–59); and Strict Products Liability–Failure to Warn against all Defendants and DOES 2 through 50, (*id.* ¶¶ 60–70), respectively.  The only non-diverse defendant named in the Complaint is Toshiba Logistics America. *See* (*id.* ¶ 16).

On November 4, 2022, Defendant Midea America removed the action to this Court based on diversity jurisdiction.  *See* Notice of Removal, *Mike Price v. Toshiba Lifestyle Products & Servs. Corp.*, Case No. 2:22-cv-08091-RGK-MAR (C.D. Cal. Nov. 4, 2022), ECF No. 1.[2]  On November 9, 2022, District Judge Gary Klausner, who presided over the

---

[2] "[A] court 'may take judicial notice of a documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Eccher v. Mendoza-Powers*, No. CIV S-03-0020 GEB DAD P, 2007 WL 867985, at *15 (E.D. Cal. Mar. 20, 2007) (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)); *San Luis & Delta-Mendota Water Auth. v. Badgley*, 136

case, remanded the action *sua sponte* for lack of subject matter jurisdiction, concluding that the Defendant's argument regarding the amount-in-controversy requirement was "too speculative" and thus, failed to plausibly allege that the amount-in-controversy exceeded $75,000. *See* Minute (In Chambers) Order Remanding Action to State Court, *Mike Price v. Toshiba Lifestyle Products & Servs. Corp.*, Case No. 2:22-cv-08091-RGK-MAR (C.D. Cal. Nov. 4, 2022), ECF No. 12.

On February 24, 2023, each Plaintiff served a Statement of Damages in the state court proceedings, alleging total damages in excess of $75,000. (ECF No. 1-2). On March 24, 2023, Defendant Midea America again removed the case to this Court. (ECF No. 1 ("Notice of Removal")). The Notice of Removal argues that this Court has diversity jurisdiction over the action because Defendant Toshiba Logistics America, the diversity spoiler, was fraudulently joined as a defendant and should be disregarded. (*Id.* ¶ 12).

On March 28, 2023, Plaintiffs filed the instant Motion. (Mot.). The Motion argues Defendant Toshiba Logistics America was not fraudulently joined and, thus, remand is appropriate. *See* (*id.* at 9–13). The Motion also requests an award of attorney's fees and costs. (*Id.* at 13–14). Defendant Midea America filed an opposition to the Motion on April 5, 2023. (ECF No. 13 ("Opp.")). Plaintiffs filed a reply on April 12, 2023. (ECF No. 17 ("Reply")).

## II. LEGAL STANDARD

A defendant may remove a civil action brought in state court of which the district courts has original jurisdiction. 28 U.S.C. § 1441(a). Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citation omitted). In

---

F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) ("Federal courts may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'" (quoting *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)). For this reason, the Court takes judicial notice of the existence and contents of the original removal action in this case.

determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined. *Chesapeake & Ohio Ry. Co. v. Cockerell*, 232 U.S. 146, 152 (1914). "Fraudulent joinder is a term of art" – when a "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987) (citation omitted).

There are two ways a defendant may establish fraudulent joinder or the existence of a sham defendant: (1) by showing actual fraud in the plaintiff's pleading of jurisdictional facts; or (2) by showing the plaintiff's inability "to establish a cause of action against the non-diverse party." *GranCare, LLC v. Thrower by & Through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris, USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)) (internal quotations omitted). Under the second way, a defendant must show the non-diverse party who was joined in the action cannot be liable on any theory. *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). Under either way, the defendant must demonstrate fraudulent joinder by "clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citation omitted), and bears a "heavy burden," because there is a "general presumption against [finding] fraudulent joinder." *GranCare, LLC,* 889 F.3d at 548 (citations omitted)).

The fraudulent joinder test shares some similarities with the analysis under Rule 12(b)(6) for failure to state a plausible claim, *id.* at 549, in that it requires a court to: assess the claim, accept "non-conclusory factual allegations in the complaint as true," and "not consider the merits defenses (other than procedural bars) claimed by the resident defendant." *North v. Samsung SDI Am., Inc. ("Samsung SDI")*, Case No. 5:19-cv-05621-EJD, 2020 WL 1984020, at *3 (N.D. Cal. Apr. 27, 2020) (quoting *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002)) (internal quotations omitted). However, the Rule 12(b)(6) and fraudulent joinder analysis "are not equivalent." *Grancare,* 889 F.3d at 549. A court may determine a claim is insufficient under Rule

12(b)(6), yet still conclude the defendant was not fraudulently joined. (*Id.*). Because the purpose of the fraudulent joinder inquiry is to allow a district court to determine if it has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682-683 (1949)).

Further, "[t]he court's inquiry into fraudulent joinder, is broader than Rule 12(b)(6)." *Samsung SDI Am., Inc.*, 2020 WL 1984020 at *3. A claim of fraudulent joinder "may be resolved by 'piercing the pleadings' and 'considering summary judgment-type evidence such as affidavits and deposition testimony.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)); *see also Soo v. UPS*, 73 F. Supp. 2d 1126, 1128 (N.D. Cal. 1999) ("Where fraudulent joinder is an issue, the court may go outside the pleadings, and the defendant may present facts showing that the joinder is fraudulent." (citing *Ritchey*, 139 F.3d at 1318. If there is any possibility above the trivial or frivolous that the plaintiff can state a claim against the non-diverse defendant, the "court must find that the joinder was proper and remand the case to state court." *Hunter*, 582 F.3d at 1046 (citing *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curium)). Finally, a court "should resolve doubts as to removability in favor of remanding the case to state court." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

### III.   DISCUSSION

Plaintiffs raise two arguments in support of remand. First, Plaintiffs assert that, because the Complaint "indisputably alleges a plausible cause of action against Toshiba Logistics America," Defendant Midea America cannot show fraudulent joinder. *See* (Mot. at 10). Second, Plaintiffs argue that Defendant Midea America has not met its burden of showing fraudulent joinder by clear and convincing evidence, (*id.* at 10–13). The Court addresses each argument in turn.

### A. The Sufficiency of the Complaint's Allegations Against Defendant Toshiba Logistics America Under Rule 12(b)(6)'s Does Not, Alone, Preclude a Finding of Fraudulent Joinder

Plaintiffs argue that the Complaint adequately alleges a cause of action against Defendant Toshiba Logistics America, as is evidenced by the Defendants opting not to file a demurrer in state court, and, as such, under binding Ninth Circuit authority, the sufficiency of the Complaint's allegations is fatal to Defendants Midea America's Motion. (*Id.* at 5). In support of their argument, Plaintiffs rely on *GranCare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 550 (9th Cir. 2018), arguing that, "[i]f a plaintiff's complaint can withstand a Rule 12(b)(6) motion with respect to a particular defendant, it *necessarily* follows that the defendant has not been fraudulently joined." (Mot. at 10 (quoting *Grancare*, 889 F.3d at 550)) (emphasis in original).

In response, Defendant Midea America argues that, on the issue of fraudulent joinder, "the question is not whether Plaintiffs can prove there is the possibility of a viable state cause of action, but whether they can prove there is a *non-fanciful* possibility of a viable claim based on real evidence." (Opp. at 15 (emphasis in original)). While this Court would not use the same phraseology, it essentially agrees with the underlying basis of Midea's argument.

Under California law, the general rule is that "[i]n a product liability action, every supplier in the stream of commerce or chain of distribution, from manufacturer to retailer, is potentially liable." *Edwards v. A.L. Lease & Co.*, 46 Cal. App. 4th 1029, 1033 (1996) (citations omitted); *see also O'Neil v. Crane Co.*, 53 Cal. 4th 335, 348 (2012). Nevertheless, to withstand a finding of fraudulent joinder against a defendant distributor, a plaintiff must plead "a causal link between the distributor and the injury alleged. *A.S. v. Pfizer, Inc.*, No. 1:13CV00524, 2013 WL 2384320, at *9 (E.D. Cal. May 30, 2013) (no fraudulent joinder where the plaintiff alleged not only that McKesson was a major distributor of the challenged drug, but also that McKesson actually distributed the drug that

was dispensed to and ingested by the plaintiff's mother while pregnant with plaintiff that allegedly injured plaintiff).

However, as stated previously, simply meeting Rule 12(b)(6)'s pleading requirement is not sufficient to defeat a challenge based on fraudulent joinder because "the court's inquiry into fraudulent joinder is broader than under Rule 12(b)(6)." *TPS Utilicom Servs., Inc.*, 223 F. Supp. 2d at 1102. Instead, "[a] claim of fraudulent joinder may be resolved by 'piercing the pleadings' and 'considering summary judgment-type evidence such as affidavits and deposition testimony.'" *Morris*, 236 F.3d at 1068 (quoting *Cavallini. Co.*, 44 F.3d at 263). As such, *GranCare's* statement regarding meeting the Rule 12(b)(6) pleading standards has not been read to overrule the Ninth Circuit's case law holding that a defendant "is entitled to present facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (citing *Smith v. S. Pac. Co.*, 187 F.2d 397 (9th Cir. 1951)); *see SDI America, Inc.*, 2020 WL 1984020, at *3–4 (looking beyond the complaint, and to defendant's admitted evidence, to find fraudulent joinder); *Tran v. Samsung SDI Co. Ltd.*, Case No. 21-cv-03819-JSW, 2022 WL 3651560 (N.D. Cal. 2022) (same). In fact, the Ninth Circuit in *GranCare* reaffirmed its previous holding that a defendant may present "extraordinarily strong evidence or arguments" to establish fraudulent joinder. *See GranCare*, 889 F.3d at 548 (citing *McCabe*, 811 F.2d at 1339). Thus, in determining the Motion, this Court may look beyond the Complaint and consider Defendant Midea America's evidence to assess whether Toshiba Logistics America is a sham defendant such that the complete diversity requirement has been met.

**B.   Defendant Midea America has not Overcome the General Presumption Against Finding Fraudulent Joinder**

Plaintiffs argue that Defendant Midea America has failed to meet its burden of showing fraudulent joinder by clear and convincing evidence because Defendant Midea America's evidence merely denies the allegations of the Complaint before sufficient discovery has taken place. (Mot. at 10–11). Defendant Midea America essentially responds that it has provided substantial evidence that meets its burden and that defeats

Plaintiffs' mere speculation and conjecture that Defendant Toshiba Logistics America is properly joined. (Opp. at 10–15, 19–22). The Court disagrees with Defendant.

The Notice of Removal contends that the citizenship of Defendant Toshiba Logistics America should be disregarded because it was not in the chain of distribution for the Subject Products. *See* (Notice of Removal at 5–9). In particular, the Notice of Removal argues that Toshiba Logistics America did not manufacture, import, distribute, coordinate, and/or facilitate the distribution of the Subject Products. *See* (*id.* at 7–8). In support of this argument, the Notice of Removal relies on, among other evidence: (1) a declaration signed by Rodrigo Teixeira, Product Management Director for Midea America ("Teixeira Declaration"), (ECF No. 1-5 at 26–27 ¶¶ 1–4); (2) a declaration signed by Jiang Huang, Product Manager for Midea America ("Huang Declaration"), (*id.* at 29 ¶¶ 1–5); (3) Midea America's responses to Plaintiffs' special interrogatories, (*id.* at 18–19 (response to Special Interrogatory No. 9)); (4) Home Depot U.S.A., Inc.'s responses to interrogatories, (*id.* at 7–8 (response to Special Interrogatory No. 8)); and (5) a declaration signed by David Vellema, Vice President of Trade Compliance for Toshiba Logistics America, (ECF No. 1-6). *See* (Mot. at 6–7; ECF Nos. 4 ¶ 4, Exs. E. F).

In the Teixeira Declaration, Rodrigo Teixeira declares that, because he is responsible for marketing Home Comfort and Small Domestic Appliances for Midea America, he has become familiar with the manufacturing and distribution of the Subject Products. (ECF No. 1-5 at 26 ¶ 2). Based on this knowledge, Teixeira details the chain of distribution for the Subject Products as follows:

> [T]he [Subject Products] were manufactured by GD Midea in China. After those products were manufactured, GD Midea sold those products to Midea Electric Trading (Singapore) Co. Pte. Ltd[.] ("Midea Singapore"). Midea Singapore then sold the [Subject Products] to Midea America so that the air conditioner and remote control could be sold in the United States. Midea America then sold the [Subject Products] to Home Depot Product Authority, LLC, which, in turn, sold them to Home Depot U.S.A., Inc. for retail sale in the United States. I understand that Plaintiffs purchased the subject air conditioner and remote control from a Home Depot in Camarilla, California.

(*id.* 26–27 ¶ 3). Thus, according to Mr. Teixeira: "To the best of my knowledge, no Toshiba entity was ever involved in the design, manufacture, or distribution of the subject products." (*Id.* at 27 ¶ 4).

Similarly, in the Huang Declaration, Jiang Huang explains that he is familiar with the Subject Products because, as part of his job duties with Midea America, he introduced, launched, and marketed the Subject Products for the United States market. (*Id.* at 29 ¶¶ 1– 2). Huang essentially repeats what Teixeira declared, stating: "Midea America purchases and imports the [Subject Products] into the United States and, in turn, distributes them. Midea America sold the [Subject Products] only to Home Depot stores in the United States. . . . Midea America does not conduct any business with Toshiba Logistics America . . . and would not have used its services to distribute into, and/or facilitate the distribution of the [Subject Products] within[] the United States." (*Id.* at 29 ¶¶ 2–3).

The statements of Mr. Teixeira and Mr. Huang are repeated in Midea America's interrogatory responses. After Plaintiffs requested that Midea America detail the chain of distribution for the Subject Products, Midea America explained that Toshiba Logistics America was not in the chain of distribution. *See* (*id.* at 18 –19 (response to Special Interrogatory No. 9)). Home Depot, in response to Interrogatory No. 8 of Plaintiffs' request for special interrogatories, also explains that it "purchased the subject products from Midea America . . . and then sold those products to Home Depot U.S.A., Inc. to sell them in the retail market." *(Id.* at 7–8).

Finally, the declaration of Mr. Vellema states that, as Vice President of Trade Compliance at Toshiba Logistics America, he is familiar with the corporate history, corporate structure, and business of Toshiba Logistics America. (ECF No. 1-6 ¶¶ 1–2). Mr. Vellema specifically asserts that he is familiar with "the various products that [Toshiba Logistics America] warehouses, brokers imports and exports, as well as any product that [the company] distributes or transports." (*Id.* ¶ 3). Based on this knowledge, Mr. Vellema declares that Toshiba Logistics America did not: (a) design, develop, or manufacture the Subject Products; (b) broker, import, or expert the subject products; (c) warehouse,

transport, ship, forward, store, or distribute the Subject Products; (d) test the Subject Products; or (e) advertise or market the Subject Products. (*Id.* ¶ 8). Thus, "[s]tated succinctly, [Toshiba Logistics Amercia] had no involvement with the [Subject Products] . . . ." (*Id.* ¶ 9).

In their Motion, Plaintiffs offer their own evidence suggesting that Toshiba Logistics America participated in the distribution of the Subject Products.[3] In particular, Plaintiffs present the declaration of their counsel, Jesse Creed ("Creed Declaration"), (ECF No. 11-1 ("Creed Decl.")), which contains various pieces of extrinsic evidence purportedly showing that, starting in 1995, Toshiba Logistics became the exclusive provider for all logistics and distribution functions for all Toshiba home appliance operating companies. For example, attached as Exhibit 7 to the Creed Declaration is a press release titled "Toshiba to Transfer Logistics Services Business to SBS Holdings, Inc." dated May 26, 2020, and published by Defendant Toshiba Corporation, which explicitly states that Toshiba Logistics Corporation "was established in October 1974 primarily to handle logistics for Toshiba's home appliance business." (Creed Decl. ¶ 14, Ex. 7; 11-8 at 2). Exhibit 8 is a March 26, 2023, screenshot of the "History" page of the website for Toshiba Logistics Corporation, which states that, starting in 1995, the Toshiba Logistics Entities became the exclusive provider of all logistics and distribution functions for all departments for Toshiba home appliance operating companies. (Creed Decl. ¶ 15, Ex. 8; 11-9 at 3). Exhibit 9, a March 26, 2023, snapshot of the "Our Strength" page of Toshiba Corporation's website, similarly states that the "company was established with the mission of reducing the distribution costs of the Toshiba Group, and has served as the 'logistics department' of the Toshiba Group for many years." (Creed Decl. ¶ 1516 Ex. 9; ECF No. 11-10 at 3).

---

[3] Defendant Midea America raises various evidentiary objections to Plaintiffs' evidence. For example, Defendant objects to Exhibits 7 and 11 as irrelevant, constituting hearsay, lacking foundation and authentication, "vague," and "incomplete." (ECF No. 13-11 ¶ 14) Plaintiffs filed responses to these objections in reply. (ECF No. 17-3). Upon review of the parties' filings, the Court overrules Midea America's evidentiary objections.

1. Finally, Exhibit 11 is a "Company profile" page dedicated to Toshiba Logistics America, which states that Toshiba Logistics America "provides logistics management and services to Toshiba operating companies . . . [and] offers services such as Warehousing, Brokerage, Import and Export Compliance, Transportation Management, Project Logistics, and Consultancy on Logistics Solutions." (Creed Decl. ¶ 18, Ex. 11; 11-12 at 2). Plaintiffs also point to certain facts suggesting that the Subject Products were Toshiba-branded products, including: (1) the Subject AC Unit, the box in which the Subject AC Unit was contained, and the Subject Remote, all of which bear the brand name "Toshiba," (Mot. at 11; Creed Decl. ¶ 5); (2) neither Midea, its affiliates, nor any other entity was identified on the Subject AC Unit, the Subject Remote, or the product identifying sticker, (Mot. at 11; Creed Decl. ¶ 6); (3) the Subject AC Unit has an Air Conditioner Limited Warranty, which states that "warranty and service must be obtained from Toshiba through the Customer Care Center or Toshiba Lifestyle Website, (Mot. at 11; Creed Decl. ¶ 7, Ex. 3; ECF No. 11-4); (4) the Subject AC Unit has a user manual, which has a Toshiba logo on every page, and directs consumers to the "Toshiba Lifestyle website, "u.s.toshiba-lifestyle.com," for product-related and warranty information, (Mot. at 11; Creed Decl. ¶ 8, Ex. 4; ECF No. 11-5); (5) the Toshiba website also has at the top of every page, the following text: "Toshiba Lifestyle Products & Services Corporation," (Mot. at 11; Creed Decl. ¶¶ 9–10, Ex. 5; ECF No. 11-6); (6) each of the website's pages has a copyright logo at the bottom, indicating that Toshiba Lifestyle Products and Services Corporation is the owner of the website's content, (Mot. at 11; Creed Decl. ¶ 11); (7) when a consumer visits the Toshiba website to register a product for customer support, the consumer enters into a contract with "Toshiba Lifestyle," (Mot. at 12; Creed Decl. ¶ 12); and (8) the contract section of the website expressly states that the website is "operated by Toshiba Lifestyle, a company incorporated in the United States and having its registered address" in New Jersey. (Mot. at 12; Creed Decl. ¶ 13, Ex. 6; ECF No. 11-7).

Based on the parties' competing evidence, it would be inappropriate to find fraudulent joinder here. Defendant Midea America's evidence is compelling, given that it

has offered multiple declarations stating that Toshiba Logistics America had nothing to do with the Subject Product's chain of distribution, and Plaintiffs do not dispute the basis of each declarant's knowledge. Nevertheless, to weigh the parties' evidence, at this time, would necessarily require the Court to conduct a "searching inquiry into the merits of the plaintiff's case," which is inappropriate when assessing fraudulent joinder. *See GranCare, LLC*, 889 F.3d at 548–49 ("We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." (citing *Hunter*, 582 F.3d at 1046). Moreover, the parties' conflicting evidence "must be viewed in the light most favorable to Plaintiffs" when assessing the propriety of fraudulent joinder. *See McCarty v. Johnson & Johnson*, No. 1:10-CV-00350 OWWW-DLB, 2010 WL 2629913, at *5 (E.D. Cal. June 29, 2010) (citing *McKee v. Kansas City Southern Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004)); *Fernandez v. PSC Indus. Outsourcing LP*, Case No. 5:17-cv-00444-EJD, 2017 WL 3129208, at *2 (N.D. Cal. July 24, 2017) ("[A]ll disputed questions of fact and all ambiguities in the controlling state law are [to be] resolved in plaintiff's favor." (quoting *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1176 (N.D. Cal. 2003) (internal quotations omitted)). Viewed in such light, the Court resolves the conflicting evidence in Plaintiffs' favor at this stage of the proceedings.

Notwithstanding, Defendant Midea America cites *North v. Samsung SDI America, Inc.* and *Tran v. Samsung SDI Co. Ltd.* for the proposition that fraudulent joinder may be found. *See* (Opp. at 16–19). However, these cases are inapposite because, in both cases, the plaintiff only relied on the complaint's unsubstantiated allegations for the assertion that the non-diverse defendant was not fraudulently joined. *See Samsung SDI Am., Inc.*, 2020 WL 1984020, at *3–4; *Tran*, 2022 WL 3651560, at *6–7. While here, as previously discussed, Plaintiffs have presented evidence suggesting that Toshiba Logistics America participated in the Subject Product's chain of distribution. In sum, Midea America has not overcome the general presumption against finding fraudulent joinder.

### C. Attorneys' Fees Are Not Appropriate

The removal statutes give the Court discretion to award "payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). Fees may be awarded where "the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 123, 141 (2005). Here, Plaintiffs request an award of attorneys' fees for succeeding on the Motion. (Mot. at 11–12). However, for reasons discussed above, the Court finds that Defendant Midea America had an objectively reasonably basis for seeking removal in the first place. Thus, the Court declines Plaintiffs' request for attorneys' fees.

### IV. CONCLUSION

For the foregoing reasons, the Motion is GRANTED. This action is REMANDED to the Los Angeles County Superior Court. However, Plaintiffs request for attorneys' fees is DENIED.

**IT IS SO ORDERED.**

Dated: May 31, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE